## SAMUEL BAILEY, JR.

*v.*

## JOHN R. BENSLEY *et al.*

1. CUSTOM AND USAGE—*dealing with reference to.* A person who deals in a particular market must be taken to deal according to the known, general and uniform custom or usage of that market, and he who employs another to act for him at a particular place or market, must be taken as intending that the business to be done will be done according to the custom and usage of that place or market, whether the principal, in fact, knew of the usage or custom, or not.

2. COMMISSION MERCHANT—*right to dispose of warehouse receipts.* Under the custom of trade in Chicago, a commission merchant, to whom grain is consigned, may dispose of the warehouse receipt given him for the same, although directed by the consignor not to sell, but to hold the grain for further orders, if he keeps on hand, ready for delivery when called on, other receipts for a like quantity and grade of grain. The receipts are not the consignor's property, and do not represent his property, but are merely evidences of a debt to the consignee.

3. SAME—*right of consignor to control as to disposition of property.* The shipper of grain may, by consent of the warehouseman, have his grain kept in a separate bin by itself, which consent must appear upon the face of the receipt, as well as the number of the bin, or he may instruct the commission man, and require him to keep the identical receipts received upon his shipment, and not to part with them except when he sells on his account.

4. SAME — *intermixing grain consigned by different persons — rights of parties.* Where a consignee of grain stores the same in a warehouse, and the same is intermixed with other grain of like grade, and a receipt is taken for the amount, the grain being no longer capable of identification, the owner parts with his property in the same, and the consignee to whom the receipt is given, instead of being a bailee, becomes a debtor to the owner.

5. SAME—*conversion.* If a commission man places the grain of his consignor in a warehouse, taking a receipt therefor, whereby the property in the grain is parted with by its loss of identity, and disposes of the receipt, and afterwards fails to keep warehouse receipts for the same amount and grade

of grain, it will not amount to a conversion of the grain. The only effect will be a bar to his charges for storage and insurance.

6. SAME—*sale to reimburse for advances.* A commission merchant may rightfully sell grain consigned to him to reimburse himself for advances made, after a reasonable time, when such is the usage of trade.

7. EVIDENCE—*of correctness of charges.* Accounts of sales rendered monthly by a commission merchant to the consignor for several years, containing items of charges for storage and insurance, unobjected to until after suit brought by the former for a balance due him, is *prima facie* evidence of the correctness of the account, and the right to make such charges.

APPEAL from the Circuit Court of Lee county; the Hon. WILLIAM W. HEATON, Judge, presiding.

Messrs. BARGE, DENSLOW & DIXON, for the appellant.

Mr. E. B. SHERMAN, and Mr. F. SACKETT, for the appellees.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

This was an action of assumpsit, brought by appellees against appellant, wherein a verdict and judgment were rendered against the latter for $1119.68.

The appellees, Bensley & Wagner, were commission merchants, doing business in Chicago, and appellant, Samuel Bailey, Jr., a grain buyer at Baileyville, Illinois. On the trial, it appeared that appellant commenced consigning grain and produce to the appellees, for sale on commission, in the year 1868, and continued so to do until the fall of the year 1873. Appellant was in the habit of making drafts upon appellees at the time of each consignment, for about ten per cent less than its market value, which drafts appellees paid—portions of the grain appellant ordered to be held until he directed it to be sold. Accounts of sale, when made, were rendered by appellees to appellant, as also monthly accounts current, giving items of debit and credit, down to December 1, 1873. For the last balance debit at that time this suit was brought, April 6, 1874.

The grain was sent by rail, and upon reaching Chicago was

stored in public warehouses, and appellees received from the warehousemen, as it arrived, receipts entitling the holder to the same quantity of grain, of similar kind and grade, upon return of the receipts.

/ The main controversy in the case is in respect of these warehouse receipts, appellant insisting that the receipts issued upon the storing of his grain were his property, and that when appellees were directed by him to hold certain grain until he ordered its sale, it was their duty to retain the identical warehouse receipts issued for that grain, whereas, appellees maintain that, according to the usage and custom of the transaction of business by commission men doing business on the Board of Trade in Chicago, in holding the grain, or in making sales of it on account of any particular shipper, no attention is paid by the commission man to the matter of holding or transferring the identical receipts which were received by him when that person's grain was received into the warehouse; that the receipts are used indiscriminately, except that in general the commission merchant endeavors, when sales are made, to get rid of the oldest receipts first, and to hold his fresh receipts; and appellees therefore insist that their duty was performed if they, at all times, kept on hand receipts for grain of the several kinds and grades, in sufficient quantities to represent the aggregate amount of grain received by them from their several consignors remaining unsold by order of such consignors.

Appellant claims he is entitled to the price the particular receipts on account of his grain sold for, and only liable for storage to the time of such sale. ( Thus, he sent appellees fifteen thousand bushels of corn in June, July, August and September, 1872, with orders to hold it. ) The warehouse receipts issued for this corn appellees sold almost immediately upon its arrival, and only $36.19 extra storage had then accrued upon it. Yet, though appellant did not order the grain to be sold until May 16, 1873, and it was then sold, and $1394.43 extra storage had accrued upon it, his claim is, that

he is entitled to the price which the identical warehouse receipts, originally received for the corn, sold for, and is only liable for the $36.19 extra storage. Appellees insist he is only entitled to the price of the sale May 16, 1873, and is liable for storage up to that time.

The proof as to the mode of doing business is, that on arrival in Chicago the grain is placed in one of the elevators or public warehouses by the railroad company, and mixed with other grain of the same kind and grade, so that its identity is wholly lost. After the grain has been received, it is passed to the credit of the consignee or commission man, and a warehouse receipt issued to him in his own name. Each receipt usually includes all the grain of the same grade going into the same elevator on account of the consignee for the same day, and not unfrequently it covers the grain received from several consignors. The number of the car from which the grain is received is written on the back of the receipt. All the testimony is, that there is no regard had to the identity of receipts, —that the date of the sale of a receipt would be no indication of the date of sale, on account of the consignor, of grain received in the cars named on the receipt.

There is no dispute as to the usage and custom of the business, and it must be conceded that the dealing of appellees was in conformity thereto, and their claim sanctioned thereby, while that of appellant is entirely unwarranted thereunder.

A person who deals in a particular market must be taken to deal according to the known, general and uniform custom or usage of that market; and he who employs another to act for him at a particular place or market, must be taken as intending that the business to be done will be done according to the usage and custom of that place or market, whether the principal in fact knew of the usage or custom or not. Story on Agency, §§ 60, 96, 199; 1 Chit. Cont. 11 Am. ed. 83; *Sutton* v. *Taltram*, 10 A. & E. 27; *Bayliffe* v. *Butterworth*, 1 Welsb. Hurls. & Gord. Exch. 428; *Lyon* v. *Culbertson*, 83 Ill. 33; *United States Life Ins. Co.* v. *Advance Co.* 80 id. 549.

We do not see how, as appellant claims, the warehouse receipt can be regarded as the property, or as representing the property, of the consignor, on account of the receipt of whose grain it issued, so that the parting with such particular receipt is a disposal of the consignor's property. The grain, on being received at the warehouse, is stored in common bins, mixed with other grain, and loses its identity, and becomes incapable of specific designation; that amount of grain is credited to the consignee. The warehouse receipt is given to the consignee as his voucher that he has in that warehouse, not the grain of the consignor, nor any particular grain, but a certain number of bushels of grain of the kind and grade mentioned in the receipt, subject to his order and disposal. The consignor is not named in the receipt. It does not represent his particular property. It is not issued to be used by him. For his protection and voucher he may be supposed to have the railroad receipt on shipment, and the acknowledgment of the consignee of the receipt of the grain.

True, the receipt bears a consecutive number, and on the back is specified the number of the car in which the grain arrived, whereby the receipt is capable of identification as having been issued upon any particular consignor's shipment of grain, and this is all. Of any two receipts issued in respect of different consignors for the like amount, kind and grade of grain, neither has any special value above the other, but they are the exact equivalents of each other for all commercial purposes, and the practice of indiscriminately disposing of receipts, regardless of the particular consignors on whose account they issued, would seem to be a matter of entire indifference to their interests, so long as there be kept on hand receipts for the several kinds and grades, in sufficient quantities to represent the aggregate amount received from the several consignors, remaining unsold. This latter, the custom requires to be done, and if done, the correctness of the charge for storage, up to the time sale is ordered, must be acknowledged, as

such an amount of grain would have been kept in store to that time on account of appellant.

It is contended, that the present is like the case of pork packed in barrels and marked with the owner's name, consigned for sale, where, by being stored in a warehouse with a large quantity of pork of the same quality and brand, it does not lose its identity as the particular property of the consignor. The case of *Seymour* v. *Wyckoff*, 10 N. Y. 213, which is cited by appellant's counsel as so holding, takes the very distinction which here exists. The defendant there, claimed that the pork of the consignor, by being stored in the inspector's warehouse with a large quantity of other pork of a similar inspection brand, and all consigned to the defendant for sale, lost its identity, like wheat mixed in a bin, etc. The court say: "The rule referred to by the defendant's counsel, applies only to cases where the property, by the mixture, does in fact lose its identity, and becomes incapable of specific designation, etc. In such a case, the owner parts with his property as he parts with the means of identifying or controlling it; and the person to whom it is delivered, instead of being a bailee, becomes a debtor." And see *Chase* v. *Washburne*, 1 Ohio St. 244.

It was remarked in the case first cited, that the property was packed in barrels, which were marked so as to identify it as the complainant's property—that there was no reason for pretending that there was a confusion or mixture of the property. It is supposed that the present case is resembled to that, because the warehouse receipts are so marked that the consignor is always capable of identification. But this does not respect the identity of property,—that was past identification from the time of the storage and mixture, and we have endeavored to show that the receipts are not the consignor's property, and do not represent his property, but are merely evidences of a debt to the consignee.

It is next urged by appellant, that this usage and custom of the indiscriminate use of warehouse receipts, not preserving their identity, is against public policy, and on that ground

36—87 ILL.

should not be sustained, but should be declared void. It is claimed that the practice furnishes the opportunity for speculation by an agent with his principal's property; that it leads the agent to assume a position adverse to the interest of his principal; that it is a constant temptation to the abuse of confidence reposed, and to unfaithful and dishonest dealing; and that it destroys the means of detecting unlawful speculations and frauds by agents.

Without remarking upon the relative advantages and disadvantages of the system now in vogue, we acknowledge that there is force in the objections which are urged against it, and that a contrary practice would, in tendency, operate as a check upon a violation of duty toward consignors, in the way of diminishing temptation thereto, and to hazardous speculation with a view to individual profit. Still, we are not prepared to hold that the natural, necessary or legitimate result of the usage is to such a degree in the injurious direction suggested, that a court is called upon to pronounce it void as against public policy, and annul dealings honestly had under it. The long experience had in its favor, would seem to denote it as of general convenience.

The supposed evil, although of long duration, has never been deemed of sufficient magnitude to attract legislative attention. Although with such usage before the view, as we may suppose from its notoriety, there has been legislation upon warehouses and warehouse receipts, regulating the subject of such receipts to quite an extent, no provision has ever been enacted looking toward repression of the practice of parting with the identical receipts received upon any particular shipment of grain, and not keeping them on hand until the time of making sale on account of the particular consignor of such shipment. The laws upon the subject appear to have been passed for protection against the fraudulent issue of warehouse receipts, without any reference to any supposed risks to the consignor in his dealing with the commission men.

The owner of grain has sufficient means of protection. By

a provision of the Warehouse law, he may, with the consent of the warehouseman, have his grain kept in a separate bin by itself, when the warehouse receipt must state, on its face, that it is in a separate bin, stating its number. He may instruct the commission man upon the subject, and require him to keep the identical receipts received upon his shipment of grain, and not part with them except when he sells on his account.

We have thus, we believe, determined the whole case, substantially, made in defense, and which sufficiently disposes of the points made upon instructions.

The point is taken, further, that appellees did not show a compliance with the terms of the custom, in that they did not make proof that they constantly kept in their possession warehouse receipts of the requisite kinds and grades of grain, in quantities sufficient to represent all the grain of all their principals which they had received, and which the principals had not ordered sold.

Even if there had been proof of the violation of duty in this respect on the part of the consignees, we can not think that it would have been attended with the consequence, which appellant claims, of rendering the sale of the receipts taken on the account of his grain a conversion of his property. As already stated, the grain, on being received into the warehouse and placed in a common bin, mixed with the grain of other persons, lost its identity, and the owner parted with his property in it, and the receipt taken was not the representative of his grain. The not keeping on hand by the consignees grain enough to answer all their liabilities for grain, might diminish the security of appellant, but would not have the retroactive effect to undo what had been done—restore to appellant his grain and render the sale of the warehouse receipts a conversion of his property. We could allow thereto no greater effect than as perhaps it might bear upon the charges for storage and insurance. It would not seem reasonable that there should be allowed any charge for storage or insurance, unless the same had in fact accrued. As respects such charge, the deal-

ings of these parties together had been for some five years, commencing in 1868. Soon after the Chicago fire of 1871, they agreed upon a statement of their accounts, showing a balance at that time of some $3000, in favor of appellees. The latter were never in any default, but appellant's account was constantly overdrawn, the present suit being for over-advances made by the appellees. A great number of letters of appellees were introduced in evidence, extending over the period of the last two years of the dealing, in which it is a constant cause of complaint by appellees that they are carrying grain for appellant to the disadvantage of both parties. During said two years, appellees rendered to appellant detailed accounts of some ninety-seven sales made by them on his account, wherein are contained these items of charges for storage and insurance. No objection was made to any of these accounts rendered until since the commencement of this suit. Such account of sales rendered and unobjected to may be regarded as *prima facie* evidence of the correctness of the account. *Mertens* v. *Nottebohms*, 4 Gratt. 163; *Shepard* v. *Bank of Missouri*, 15 Mo. 141; *Philips* v. *Belden*, 2 Edw. Ch. 1. And we do not regard the evidence of the sale of certain of the warehouse receipts taken on account of appellant's grain, made before the time the grain was ordered and reported sold—up to which latter time storage was charged—as impeaching the correctness of the charge for storage, in view of the proof of the practice of the indiscriminate use of receipts, and that the date of the sale of the receipt would not indicate a sale then on account of the consignor of the grain in respect of which the receipt was issued. We think the facts and circumstances here afford evidence tending to prove that the grain was retained and kept on hand during all the time for which storage was charged, and that the verdict should not be set aside for want of evidence in that regard.

(Objection is made, that certain of the sales were made without being ordered, but the evidence, we think, warranted the finding that the sales were rightfully made, in pursuance of

the usage of the trade, for the reimbursement of advances which had been made.

The judgment must be affirmed.

*Judgment affirmed.*