# National Bank of Pontiac

## v.

## James Langan.

*Bailments—Public Warehousemen—Deposit of Corn—Levy—Trover.*

1.   Upon a deposit of grain in a public warehouse in this State, to be mixed with the grain of other persons, the depositor becomes owner of an equal quantity of grain of the same kind and quality as that deposited, the transaction being a bailment and not a sale.

2.   Grain so deposited is not subject to levy under execution against the warehouseman, and the owner may maintain an action for the conversion thereof when it has been sold under such execution.

3.   One who is engaged in storing grain for a compensation in an elevator and its appurtenances, is a public warehouseman under the laws of this State.

[Opinion filed December 8, 1888.]

Appeal from the Circuit Court of Livingston County; the Hon. N. J. Pillsbury, Judge, presiding.

Messrs. Strawn & Patton, for appellant.

It is a general rule that where it is understood between the contracting parties that the goods delivered are to be mixed with like goods of the party receiving the goods, the transaction is held to be a sale and not a bailment.   Carlisle v. Wallace, 12 Ind. 252; Smith v. Clark, 21 Wend. 83.

And the same is held of a deposit of grain with a warehouseman, with the understanding that, when the depositor desires to sell, the warehouseman is to pay him the highest price, or return a like quantity and quality.   Johnson v. Browne, 37 Iowa, 200; Rahilly v. Wilson, 3 Dill. (C. C.) 420; Chase v. Washburne, 1 Ohio St. 244; Butterfield v. Lathrop, 21 Pa. St. 225.

See also to the same effect the following cases:   Reed v. Abbey, 2 N. Y. Sup. Ct. 380; Bates v. Coster, 3 N. Y. Sup. Ct. 580; S. C., 1 Hun, 400; Jenkins v. Eichelberger, 4 Watts,

121; Pritchett v. Cook, 62 Pa. St. 193; Herrick v. Carter, 56 Barb. 41.

Where the identical thing delivered is to be restored, although in altered form, the contract is one of bailment and the title to the property is not changed; but where there is no obligation to restore the specific article, and the receiver is at liberty to return another thing of equal value, he becomes a debtor to make the return and the title of the property is changed; it is a sale. Mallory v. Willis, 4 N. Y. 76; Moore v. Holland, 39 Me. 307.

It is held that trover does not lie for property the plaintiff has purposely so intermingled with other similar property of the defendant that it can not be distinguished or separated from the common mass; but in such cases the whole mass becomes the property of the person with whose goods it was so intermingled.

In several cases in Illinois the foregoing doctrines are applied to cases of grain delivered in warehouses under contracts and circumstances similar to the case at bar. Lonergan v. Stewart, 55 Ill. 44; Richardson v. Olmstead, 74 Ill. 213; Bailey v. Bensley, 87 Ill. 556.

As to the common law rule in grain transactions involving the facts and circumstances of the case at bar, in the country at large, there are two currents of authority.

Where the grain is stored in an elevator with the understanding between the parties that it is to be mingled with other grain, and it is not contemplated that the keeper of the elevator shall return the identical grain stored, but only that he shall return an equal amount of grain of the same kind and grade, substantially as in the case at bar, the following cases hold that the transaction is a sale: South Australian Ins. Co. v. Randall, L. R. 3 C. C. 101; Chase v. Washburne, 1 Ohio St. 244; Lonergan v. Stewart, 55 Ill. 44; Richardson et al. v. Olmstead, 74 Ill. 213; Bailey v. Bensley, 87 Ill. 556; Johnson v. Beaver, 37 Iowa, 200; Nelson v. Brown, 44 Iowa, 445; Carlisle v. Wallace, 12 Ind. 252; Rahilly v. Wilson, 3 Dill. (W. S. C. C.) 420.

The following cases, on the contrary, held the transaction to amount to a bailment: Sexton v. Graham, 53 Iowa, 181; Nel-

son v. Brown, 53 Iowa, 555; Ledyard v. Hibbard, 48 Mich. 421; Andrews v. Richmond, 34 Hun, 20; 6 Am. Law Rev. 450.

Kent conducted his warehouse precisely as did Stewart and Richardson & Co., prior to the statute, and precisely as have all country warehouses or elevators been conducted both before and since the statute, and there is no reason why a rule which is purely statutory in Illinois should be forced upon these parties who did not deal under the statute or in contemplation of it.

Messrs. McILDUFF & TORRANCE, for appellee.

UPTON, J.   Lester E. Kent, in the fall and winter of 1882 and the spring following, was engaged in business as a grain dealer and warehouseman, and as such bought, stored and shipped grain, among other places, at Nevada, in Livingston County, where he had a grain elevator, warehouse and two corn cribs.

His principal business was the purchase and sale of grain on his own account, but when offered at his elevator or storehouse he received grain, including corn in the ear, *in store for a compensation.*

Attached to or near said grain elevator and warehouse were the two cribs, at and in which was received and stored for compensation, corn in the ear.   The grain in the elevator or warehouse and the corn in these cribs purchased by Kent, and that which was received by him in store for a compensation, were not kept separate, but were put as unloaded into common bins or cribs, from which he would shell and ship to market as he might desire, supplying the amount of stored grain shipped, by receipts purchased on in store from other parties.

At various times during the winter of 1882, and the spring of 1883, there was delivered at such elevator and warehouse belonging to appellee eleven hundred and forty-two bushels and twenty-five pounds of corn in the ear, after the delivery of which, Kent, by his agent, gave to appellee a receipt, of which the following is a copy:

" NEVADA, ILL., Feb. 8, 1883.

"Received of James Langan, eleven hundred and forty-two bushels and twenty-five pounds of ear corn in my elevator. Rec. it as rejected, and I agree to pay him any time for any portion said Langan wishes to sell of it, highest price I am pay-ing for such grade, and I also agree to keep it in my elevator for him ninety days free of storage; after that I will charge half a cent per bushel per month for storage.

                         "L. E. KENT,
                              "Per Riley."

The corn mentioned in this receipt had, before the execution and delivery thereof, in fact been shelled, shipped and sold by Kent, and other corn purchased and put in place thereof.

On the 12th day of May, 1883, the National Bank of Pontiac caused an execution to be issued upon a judgment rendered in the Circuit Court of Livingston county, in its favor, against Kent, for about the sum of $4,785, and placed the same in the sheriff's hands the same day to execute.

On the 14th day of May, Langan, hearing that Kent had failed to put a notice in writing on said corn crib (then containing 500 or 600 bushels of corn in the ear), posted a notice that he claimed the corn therein, and on the same day, Morrow, the president of the bank, and acting for it, also posted a notice on said crib that the bank claimed the corn, and he at the same time placed one Riley in charge thereof, as custodian for the bank.

We think Langan posted his notice first in point of time, although the evidence upon that point is not so full as might be desired, but we do not consider this material in the view we take of the case.

On the 16th of May the sheriff, by virtue of that execution. actually levied on the corn in the crib, and in due course sold it at sheriff's sale. The bank purchased it, and applied the proceeds in part satisfaction of its judgment against Kent, claiming the corn as belonging to Kent.

Appellee made demand of Kent, Morrow and the bank for the corn, while in possession of the sheriff under the execution and levy thereon.

Upon being refused the property he brought suit in trover in the Circuit Court of Livingston county, against Kent and Morrow and the bank jointly, for its conversion, and upon hearing in the Circuit Court obtained a judgment against all said parties defendant, which upon appeal to this court was reversed and remanded to the Circuit Court for want of evidence of a joint conversion by all the defendants. National Bank of Pontiac v. Langan, 16 Ill. App. 505.

Upon which remand appellee, in the court below, dismissed the suit as to Morrow and Kent, and upon leave of court the pleadings were amended to conform to such change of parties, issues were joined, jury waived and cause submitted to the court for trial, which, after hearing the evidence, gave judgment against the appellant in the sum of $215 and costs, to reverse which the cause is again before this court on appeal and errors are assigned upon the record.

In the exhaustive argument of the learned counsel for appellant our attention is called, first, to what is termed an assumption of the court below, "that Kent was in the business of receiving grain under the warehouse law," and it becomes important to determine under the evidence in the case whether Kent was or was not in law or fact, in the receipt of the corn in question, engaged in business under the warehouse act.

Article XIII, title, "Warehouses," of the Constitution of 1871, Sec. 1, declares that, "All elevators or storehouses where grain or other property is stored for a compensation, whether the property stored be kept separate or not, are declared to be public warehouses."

This record discloses the fact, uncontradicted and undisputed, that Kent controlled, managed and occupied this elevator or storehouse, with corn cribs attached and adjacent thereto, at the place and time in question, and stored therein, for a compensation charged for such storage, corn on the cob belonging to the appellee. The receipt offered and in evidence shows that fact. Kent swears to it positively, and no word or circumstance in evidence in the case, as shown by the record, contradicts it.

We are not aware whether the receipt in question is in the form adopted and put out by those acting and conducting their business under the warehouse law, nor do we deem that material to this inquiry; but the substance of the transaction rendered by the receipt is, to our minds, that Kent was at that time doing business in an elevator and its appurtenances where grain or other property was stored for a compensation, and, as such, was under the organic law of the State a public warehouseman, as to the corn in question in this suit, and doing business as such.

The question now presented is, to whom did the corn in question, so stored in such public warehouse, belong? In other words, who was the owner thereof at the time of such levy of appellant's execution thereon?

We answer, with this record before us, that it was either the property of the appellee, Langan, or that of Lester E. Kent. If the latter, it was liable to appellant's execution and the judgment below should be reversed. If to the former, that judgment should and must be affirmed.

It is contended on the part of appellant, that, where grain is stored in an elevator or warehouse with the understanding, knowledge or consent between the parties concerned therewith that it is to be commingled with other grain of like kind and quality, and it is not contemplated that the keeper of the elevator, or warehouseman, shall return the identical grain stored, but that he shall only return an equal amount of grain of the same kind and grade substantially, as in the case at bar, such transaction constitutes a sale of the grain so stored to such warehouseman. To sustain that view we are cited to the following cases in this State: Lonergan v. Stewart, 55 Ill. 44; Richardson v. Olmstead, 74 Ill. 213; Bailey v. Bensley, 87 Ill. 556.

It will be noticed that the first two cases cited above, viz., the 55th and 74th Ill., were determined without reference to the organic act above referred to, and the legislative enactment of 1871 entitled "Warehouses," and the subject-matter in controversy in those cases arose and was decided before the adoption of the Constitution of 1870, or the enactment of

the General Assembly in furtherance thereof, and as a conse-
quence could not be regarded as authority, in view of such
provisions or enactments or in contradiction thereof.

The case of Bailey v. Bensley, *supra*, was determined, and
the subject-matter thereof arose or accrued, in 1873, but, in
our judgment, is not in point for the appellant.

In the subsequent case of German National Bank v. Mead-
owcraft, 95 Ill. 130, the Supreme Court say :   " In that case
(Bailey v. Bensley) the questions involved were between the
commission merchants and their consignor.   He had shipped
grain to them to be sold when he should so order.   When
they sued him for a balance for advances, commissions and
charges paid for storage, one of the objections raised by him
was that, on receiving receipts for grain he had consigned to
them with directions to hold it, they had sold and transferred
the warehouse receipts given when his grain went into store,
and that when he ordered them to make sales they furnished
and sold other receipts representing the same quantity and
grade of grain as he had stored, and for which the receipts
had been given.   But it was held that this, being according to
usage on the Board of Trade, was unobjectionable."

" Here, the court was not discussing what legal right the
holder of the receipt for the grain has, but what claim the
consignor has on his consignee, to whom the receipt was
given, and which had never been delivered to the consignor,
so as to vest title in him of any specific property or any num-
ber of bushels of the entire mass with which it was mingled.
Had the consignee returned the receipt to the warehouseman
and demanded a delivery of the grain, the latter could not
have been heard to say the consignee was not the owner of
that number of bushels of grain to be taken and separated
from the great bulk of grain of the same grade.   He would
not have been entitled to the very same grain he stored or
placed in the warehouse, but to other similar grain.   So it
would have been had the consignee given the receipt to the
consignor, and he had made the tender and demanded the
grain for which the receipts called."   This case does not im-
pinge the rule that, when the owner of grain consents that

his shall be commingled with that of another, he can not recover for its conversion.

By judicial determination, therefore, the case of Bailey v. Bensley can have no application in appellant's favor in the case at bar, nor in support of his theory. On the other hand, as subsequently construed, as we have shown, it is an authority that when grain was commingled, as in the case at bar, as between the warehouseman and the owner of the grain so stored, it was but a bailment and not a sale.

It is evident that in the cases cited by appellant as sustaining his theory of a bailment the test was solely one of identity under the common law rule, which was, that when the owner parts with the means of identifying his property or controlling it, the person to whom it is delivered instead of being a bailee, becomes a debtor. It was upon that principle and in consonance with that rule that the cases cited by appellant were determined. In the case at bar, the organic law and the statute in furtherance of its provisions have removed that test and declared, in effect, that such a mixture by consent in a public warehouse in this State shall not deprive the owner of the grain of his *legal title* thereto, or what is the same thing, to a like quantity of the same in kind and quality stored.

But the precise question we regard as settled in this State in the cases of Meadowcraft v. German National Bank, 95 Ill. 124, and Canadian Bank v. McCrea, 106 Ill. 281. It is admitted by appellant to have been expressly determined under the act of 1871, passed to give effect to article 13 of the Constitution, *supra,* that, in a deposit of grain in a public warehouse in this State to be mixed with the grain of other persons under the warehouse act, such depositor becomes the owner of an equal quantity of grain of the same kind and quality as that deposited, and that the title to such deposited grain does not pass to the warehouseman; that, in short, it is a bailment only and not a sale.

Those cases are the latest adjudication of the court of last resort in this State upon that subject, and we are not at liberty to disregard them. They further hold that, after demand made and on refusal to surrender the same, and the payment

or offer to pay charges for storage thereof, an action may be maintained for the conversion thereof, by such consignee, as the owner.

This settles the question of the ownership of the corn in controversy, as between the warehouseman, Kent, and the appellee, Langan, in favor of appellee. As between them it was Langan's corn, and as such the appellant had no authority to levy upon or sell the same, and must, having done so, respond in damages for the value of the corn. Schlinder et al. v. Westown et al., 9 Ind. 395; Sexton v. Graham, 53 Iowa, 181; Rice v. Dixon, 97 Ind. 97; Rotherburg v. Dixon, 97 Ind. 106; Young v. Miles, 23 Wis. 643; Cushing v. Breed, 14 Allen, 376; Broadwell v. Howard, 77 Ill. 305.

In the case last cited the court says: "The fact that he keeps a public warehouse is of itself notice to the world that the property there stored is held for others; at least, sufficient to put parties interested on inquiry as to such right." We have carefully examined the record in this case and the errors assigned thereon, and are of the opinion that in rendering judgment for appellee in the court below no error was committed, and that judgment is affirmed.

*Judgment affirmed.*