RACHEL J. MOSTOLLER

v.

ANTHONY S. DUBOIS.

*Warehousemen—Sale or Bailment—Evidence.*

Where plaintiff had stored grain in the warehouse of defendant, and such grain was destroyed by fire, in an action brought to recover for the value of the grain, where the defense was that the transaction was not a sale but a bailment, and that the defendant was merely responsible as a warehouseman, this court holds that the evidence clearly showed that the transaction was a sale, and that the verdict for plaintiff was required by the evidence.

[Opinion filed December 8, 1890.]

APPEAL from the Circuit Court of Lee County; the Hon. JAMES H. CARTRIGHT, Judge, presiding.

Mr. A. K. TRUSDELL, for appellant.

The destruction of appellant's elevator by fire relieved her of all liability on account of grain stored.

Section 171, Chapter 114, Starr & C. Ill. Stats., provides as follows: "No public warehouseman shall be held responsible for any loss or damage to property by fire, while in his custody, provided reasonable care and vigilance be exercised to protect and preserve the same."

It can not be claimed, in this case, that appellant was guilty of any lack of care and vigilance in reference to appellee's property, or that the same was burned on account of any want of care or vigilance on her part. It is nowhere claimed that the fire occurred on account of any negligence on her part. When the plaintiff delivered his grain and took his warehouse receipt, he took the risk of loss by fire, and should have protected himself against loss by having the same insured. He evidently was anxious to hold his grain, and to keep it in appellant's elevator, instead of keeping it at his own home, where it would be subject to waste and be exposed to as great danger from fire as in appellant's elevator, and he took the risk. When he got her receipts all future waste was her loss, as she was obliged to return all the receipts called for or show its loss by fire or heating. He was bound to know the law, and knowing it, assumed all the risk from fire when he had it put in the elevator, and must stand the loss, unless he can show the fire occurred by reason of the negligence or want of vigilance on appellant's part. Canadian Bank v. McCrea et al., 106 Ill. 292.

And it is further provided by said Section 171, that it shall be the duty of the warehouseman to ship out grain so received by him, in the order in which it is taken in. Without doing so, elevators could not be operated to any great extent.

The court erred in admitting in evidence the warehouse receipts against appellant's objection.

The court will bear in mind that the declaration contains only the common counts, and that no copy of the receipts was attached to the same, and no specific bill of particulars under which they could be received in evidence. They by themselves amount to nothing more than a contract of deposit or

bailment, and prove nothing but a bailment. Marks v. The Cass County Mill and Elevator Co., 43 Iowa, 146. Cooley on Torts, 633–634.

By keeping possession of his warehouse receipts, Dubois retained the ownership of the grain therein mentioned; the title never passed from him, and he was its owner when it burned, and must stand the loss. It is true appellant had possession of the grain, but the title still remained in appellee; she only held it subject to his orders. He at any time could have demanded his grain, and by returning his receipts and tendering proper charges, if any, it would have been her duty to have surrendered it to him; or in case of her refusal, he could have maintained his action therefor, unless she could show that it had been destroyed through no want of negligence on her part. But, as I have shown, he never has offered to return the receipts, and made no tender for storage before he commenced this suit, consequently there has been no conversion of the grain by her and no purchase by her. That the possession of the warehouse receipts retained in Dubois the title, I refer to Broadwell v. Howard et al., 77 Ill. 308; Cool et al. v. Phillips et al., 66 Ill. 217.

Messrs. SHERWOOD DIXON and S. H. BETHEA, for appellee.

The appellant purchased the grain of appellee, and did not receive it to be stored for compensation. The grain of appellee was not to be restored to him, nor any other grain; he was to be paid its market value on any day after its delivery that he might select.

Its identity was not preserved; the grain received was not retained, nor any grain in like quantity and of the same quality, in lieu of it.

Appellant paid money to appellee on account of it whenever requested; money and goods to the value of $269 was thus paid.

This was a sale. Lonergan v. Stewart, 55 Ill. 44; Richardson v. Olmstead, 74 Ill. 213; Grier v. Stout, 2 Ill. App. 602.

Appellant was not a public warehouseman.

The evidence does not show that she was engaged in the business of receiving grain to be stored for a compensation.

Mostoller v. Dubois.

She does not therefore come within the rule announced by this court in the case of Bank of Pontiac v. Langan, 28 Ill. App. 401.

Article XII of the Constitution of 1870, and the statutes enacted in pursuance thereof, were not designed to affect cases of this character.

When the case of Richardson v. Olmstead, *supra*, was decided by the Supreme Court, the act of the Legislature of 1867 was in force. That act contained every provision, substantially, that is in the Constitution of 1870 and the statute enacted since, that can be said to affect contracts of this character. Yet in that case the Supreme Court held that the warehouseman, under like circumstances to these, became a purchaser of the grain.

So it must be an authority that the present statute does not exempt the grain buyer under the circumstances of this case from a liability to the producer. He continues to be a purchaser under these circumstances, the same as before the adoption of the constitutional and statutory provisions respecting public warehousemen who receive grain on store for compensation.

LACEY, J. This was a suit brought by the appellee against the appellant in an action on the case on promises to recover for certain grain claimed to have been sold by the former to the latter. The claim was tried before a jury, resulting in the return of a verdict for appellee in the sum of $687.80, upon which judgment was rendered and from which this appeal is taken. The main contest in the case was as to whether or not the grain was delivered by appellee to appellant in store or whether it was in fact a sale, the warehouse of appellant having been consumed by fire and a portion of grain remaining therein having been consumed, not equal in amount, however, to that delivered to her by appellee.

The amount of grain in controversy is witnessed by four grain receipts, as follows: one dated October 17, 1884, for 249 bushels and 40 lbs. rejected corn in store as stated in receipt; the 2d, September 7, 1889, 1,693 bushels No. 2 oats in

store without any storage; 3d, October 17, 1889, 2,002, 80 bushels No. 2 corn in store without any storage; 4th, October 27, 1888, 982 bushels No. 3 corn, 306.20 corn No. 2 in store without storage.

The evidence in the case as to the nature of the transaction is not contradictory. It rests entirely on the testimony of the appellee, the appellant's agent, J. Mostoller, her husband, and the receipts. The fire occurred October 27, 1889, when all the remaining corn and oats in store was consumed by fire, and on the 20th December, 1889, appellee demanded his grain or his payment therefor from appellee's agent. Aside from the receipts no one testified as to what the contract was except the appellee himself, and there was no other evidence in regard to the matter except the actions and conduct of the parties themselves. The appellee swears that the appellant's agent agreed to pay the market price for the grain when he (appellee) got ready to sell it. These promises were made at different times, at the time he stored the grain and when he hauled it. Then he also testified that appellant paid him money on the grain and also delivered him coal. To this evidence there was no contradiction. From this it appears there was a sale of the grain to appellant, the price to be fixed by appellee at any time he chose within a reasonable time which the law would imply. This price was to be fixed at the market value at the time when appellee should designate, within a reasonable time, according to the implication of the law. The appellee had no option to withdraw the grain and sell it to another or to dispose of it in any way to another. Appellee had only the right to fix the price by setting the time. Now, how was the matter treated by appellant? It was treated by her as a sale throughout. She mixed the corn and oats with other grain and shipped all the corn, probably 500 or more bushels, remaining in the warehouse, not able to be identified as appellee's corn. There was not enough in the warehouse, however, of any kind of corn to make up anything near the amount delivered by appellee. If this was not a sale, the appellant was palpably violating the law in thus shipping the corn out of the warehouse, not retaining the

Mostoller v. Dubois.

amount stored, and also violating the criminal statutes. We should not impute any such improper actions to her unless compelled to by the evidence. There is no sufficient proof that appellant kept a warehouse for the storage of grain of class "b" provided for in the statute. There was no proof that any one else stored a bushel of grain in the warehouse. The evidence is also that the money advanced on the grain was intended as payments and not as a mere loan, as we understand it.

The oats rest on the same principle as the corn and on the same contract and it would not matter that there were as many oats in the warehouse when it burned as were delivered by appellee. The jury were not authorized under the evidence to find any other verdict than they did, without it might be as to the amount. While the instructions for appellee are not based on the right theory of the law, and in a different case would have been improper, yet in view of the evidence they can not be harmful, and appellant's instructions were all she could ask. We think the verdict on the question of sale under the evidence was so clearly right that it makes no material difference as to the instructions. As to the amount of the verdict we are satisfied that the evidence fully justifies it. Under the constitution and laws of this State, if the proof had shown that the grain in question had been taken in store by appellant for compensation, and she had been keeping a warehouse for such purpose, then she would have been protected as a warehouseman under such constitution and laws, even though the grain were mixed with other of like quality, and even though the warehouse and grain were consumed by fire, if without her fault. One other significant fact in this case is that no compensation was to be charged for storage as to nearly all the grain. The principle announced in Bank of Pontiac v. Langan, 28 Ill. App. 401, is called in question, but it is scarcely necessary, in view of what has been said, to say, that we fully adhere to the point decided therein.

It is unnecessary to notice any other point raised by counsel for appellant in his brief. The judgment of the court below is therefore affirmed.

*Judgment affirmed.*