## Samuel P. Kelley v. Charles S. Maguire.

1.  FACTOR AND PRINCIPAL—*Where a Person Selects a Particular Place As His Market He Will be Bound by Its Usages and Customs.*— Where a person selects a particular place as his market and consigns his commodities to such place for sale, he will be held as intending that his sales are to be conducted by his agent or factor there, according to the general usages and custom of the place.

2.  SAME—*Degree of Care Required.*—A factor is only required to act with reasonable care and diligence in his employment. The known usages of trade and business enter into his employment and he is only required to conduct his business according to such usages and customs.

3.  SAME—*Re-imbursement, Where the Factor Advances Money for His Principal.*—A factor is entitled to be re-imbursed for money necessarily advanced for his principal in carrying out his business.

Assumpsit, for money paid out, etc.  Appeal from the Circuit Court of Ford County; the Hon. JOHN H. MOFFETT, Judge, presiding. Heard in this court at the May term, 1901.  Affirmed.  Opinion filed December 10, 1901.

O. H. WYLIE and TIPTON & TIPTON, attorneys for appellant.

McQUISTON & FREDERICK and C. H. PAYSON, attorneys for appellee.

MR. PRESIDING JUSTICE HARKER delivered the opinion of the court.

Appellant is a grain merchant at Clarence, Illinois.  Appellee is a commission merchant at Cincinnati, Ohio.  In October, 1900, appellant shipped to appellee to be sold in the Cincinnati market, two car loads of corn and two car loads of oats.  He made two sight drafts of $350 each on the corn and a sight draft of $725 on the oats, all of which appellee paid.

The grain was sold in the usual way in the Cincinnati market, and the net proceeds, after deducting freight charges, etc., amounted to $1,249.88, $175.88 less than the amount of the drafts paid by him. This suit was brought to recover the amount of the overdrafts, and a trial resulted in a judgment in favor of appellee for $175.88.

The evidence shows that the relation between the parties was that of factor and principal. The tone of certain letters written by appellant to appellee, in which he directed appellee to do the best he could with the grain, and expressed the hope that he would be able to get a good price for it, indicates that. All that was required of appellee, then, was to use reasonable diligence in receiving the grain and in disposing of it. If he did so, and performed his duties in accordance with the recognized usages of the trade at Cincinnati, and accounted to his principal for the proceeds, he did all the law imposed upon him. Phillips et al. v. Moir, 69 Ill. 156.

Appellant, having selected Cincinnati as his market, will he held as intending that the business should be conducted by appellee according to the general usage and custom of that market. Bailey v. Bensley et al., 87 Ill. 556; Lyon v. Culbertson, 83 Ill. 33; Samuels et al. v. Oliver et al., 130 Ill. 73.

The evidence shows that it is the custom in Cincinnati, in receiving consignments of grain, for the railroad company to notify the consignee of the arrival of the cars, for the grain to be then inspected by official inspectors, appointed by the chamber of commerce, for the grain to be sold by sample on 'change and to be weighed by regular weighers, who make out and return weight certificates, showing the quantity of grain in each car. The grain in question was received by appellee and disposed of at the full market price, in accordance with each of the above named regulations. In all he did, he was governed by the usages and customs of the trade of the market in which the business was transacted, and for aught that appears in this record, he secured the highest price obtainable for the grain.

Appellant nowhere charges appellee with negligence or fraud, but insists that a mistake was made somewhere in the weighing of the grain. But if a mistake was made in that regard, it was an error for which appellee, as a factor, could not be held liable. When appellant shipped the grain to appellee to be sold in Cincinnati, he must be held to have intended that the grain should be weighed in the manner that grain is usually weighed in that market. He must be held to have intended that appellee should rely on the weight certificates issued by regular weighers; and even though the weighers who weighed appellant's grain made a mistake, appellee could not be held liable therefor unless he could have prevented the mistake by the use of reasonable diligence.

The court properly refused to allow appellant to prove what the grain weighed when shipped from Illinois. Appellee being a mere factor, the question at issue was not how much grain was shipped. Had the evidence shown that appellee did not exercise proper care and diligence in his employment, or had there been evidence tending to show a fraudulent collusion between him and the weigher, such proof would have been proper. But as he acted honestly and diligently, and in strict compliance with the rules and regulations which governed the market in Cincinnati, he could not be held liable for any shortage in weights.

The admission in evidence of the weight certificates was proper because the evidence shows that it is the usage of the trade at Cincinnati for commission men to rely upon the weight certificates as correct. It is the customary mode of ascertaining the amount of grain sold. Appellee having, by the payments of the sight drafts drawn by appellant when he shipped the grain, advanced more than he realized from the sale, was entitled to recover back the surplus. A factor is entitled to be re-imbursed for money necessarily advanced his principal in carrying out his business. Samuels et al. v. Oliver et al., 130 Ill. 73.

Numerous objections were made in the court below during the examination of witnesses to certain questions and

answers and are renewed here. They are unimportant and evidently had no controlling influence on the verdict. The judgment does justice between the parties and will be affirmed.