Oldershaw v. Knoles.

PERCIVAL P. OLDERSHAW ET AL.

v.

STEPHEN R. KNOLES.

| 6 | 325 |
|---|---|
| 146s | 309 |

| 6 | 325 |
|---|---|
| 55 | 284 |
| 55 | 377 |

| 6 | 325 |
|---|---|
| 59 | 511 |

| 6 | 325 |
|---|---|
| 64 | 305 |
| 64 | 421 |

| 6 | 325 |
|---|---|
| 68 | 574 |

1. PRACTICE—FORMER DECISIONS OF THIS COURT.—A decision of this court is binding upon and must control the action of the court from which the appeal is taken, in the subsequent progress of the case, so far at least as concerns the particular case in which the decision is rendered, unless the facts subsequently appearing in evidence are so far changed as to invoke the application of legal principles which were inapplicable to the case at the time the decision was rendered.

2. BOARD OF TRADE CUSTOM—SUBSTITUTION OF CONTRACTS, OR CLEARANCES—DIFFERENCE IN PRICE.—A custom on the Board of Trade, allowing commission men to exchange contracts or make clearances for their customers in certain cases, can only be exercised when the commission merchant appears in one case as the vendor and in another as the purchaser of the same amount of a particular commodity for the same delivery. The contracts

must be identical in all respects except as to price. This difference, if any exists, is provided for and compensated.

APPEAL from the Superior Court of Cook county; the Hon. JOSEPH E. GARY, Judge, presiding. Opinion filed May 25, 1880.

This cause was brought to this court by appeal, at the March term, 1879, and a judgment therein in favor of Knoles, the defendant below, was reversed, for reasons stated in the opinion then filed. Oldershaw v. Knoles, 4 Bradwell, 63. After the cause was reinstated in the court below, the defendant, by leave of the court, filed a plea of set-off, and the cause again coming on to be tried before the court and a jury, the plaintiffs, in addition to the evidence adduced upon the former trial, gave the evidence tending to prove the customs and usages of business upon the Board of Trade of Chicago, which was excluded on said trial, and thereupon the court, after refusing various instructions to the jury asked on behalf of the plaintiffs, gave to them, at his own instance, the following instruction:

" By the ancient principle of law as settled by multitudes of decisions, the plaintiffs in making contracts on behalf of the defendant, for the purchase of lard to be delivered in April, 1877, were responsible only for the exercise of fidelity and ordinary skill and diligence in attending to the interests of the defendant, and did not guarantee that the parties from whom the lard was to come should fulfil or perform their contract. And the defendant had a direct remedy by action against the parties with whom the plaintiffs had made the contracts, as well as against the parties for whom (if they were acting on behalf of others) the other parties to the contract made the contract of sale."

" Now the plaintiffs and their witnesses attempt to change these principles, not by any agreement with the defendant, or any rule, resolution or publication by the Board of Trade, or by the members thereof, but by their own understanding of what the rights, obligations and liabilities of the members of

Oldershaw v. Knoles.

the Board and their principals are in relation to each other, and what the relations of the respective principals are to either, under the customs and usages of the Board, and the members thereof. They insist that the members of the Board are guarantors to their principals of the fulfillment by the parties with whom they make contracts, of such contracts, and that their principals have no relations with or right of recourse to anybody but themselves, in case of failure by the other parties to perform; and that, therefore, they may, after having made contracts under directions of their principals, discharge the other parties to such contracts, and still hold their principals liable to themselves to perform with themselves the terms of the contracts as originally made with other parties.

"The jury are instructed that the law cannot be thus changed; that after the plaintiffs had made the contracts on behalf of the defendant, it was their duty not to cancel them as long as the defendant was not in default, but to require from the other parties, for his benefit, such security by way of deposits of margins as under the rules of the Board of Trade they might from time to time be entitled to demand. Now, it is conceded by the plaintiffs that they did, as to three-fourths of the dealings in controversy, cancel the contracts without the consent or knowledge of the defendant, very soon after they were made, and before he was in default on the score of margins. This conduct on their part, however innocent in intention and harmless in its results, released the defendant from all liability as to the contracts cancelled, and prevented the plaintiffs from demanding margins upon them. Then, as the plaintiffs afterwards, and before the maturity of the contract as to the other 250 tierces, cancelled that, also, without the consent or knowledge of the defendant, he is now, under his plea of set-off, entitled to recover his $700 deposited with the plaintiffs.

"As these views, if correct, are decisive of the case, it is unnecessary to consider any of the testimony which is conflicting. The verdict of the jury should, therefore, be in favor of the defendant for $700.

In obedience to the foregoing instruction, the jury found a verdict in favor of the defendant on his plea of set-off for

$700. For this sum and costs, the court below, after over-ruling the plaintiff's motion for a new trial, rendered judgment for the defendant.

Messrs. NEEDHAM & MILLER, for appellants; as to custom of trade, cited Home Ins. Co. v. Favorite, 46 Ill. 263; Gregory v. Wendell, 40 Mich. —.

As to distinctions between rights and obligations existing between commission merchants and their customers and ordinary principals and agents: Price v. Glover, 40 Md. 102; Horton v. Morgan, 19 N. Y. 170; Stewart v. Drake, 46 N. Y. 449; Nourse v. Prime, 4 Johns. Ch. 490; Worthington v. Tormery, 34 Md. 293.

Mr. A. B. JENKS, for appellee; that contracts for future delivery of a commodity where there is to be no delivery, but a mere settlement of differences in market values, are void, cited Rev. Stat. Chap. 38, §§ 130, 131; Pickering v. Cease, 79 Ill. 328; Lyon v. Culbertson, 83 Ill. 33; Cassard v. Hinman, 1 Bos. 207.

A broker for a special transaction can only bind his principal as to such transaction: Wharton on Agency, § 712.

A broker employed to purchase for another cannot buy of himself: Tewksberry v. Spruance, 75 Ill. 187; Story on Agency, § 333; Wharton on Agency, § 717; Taussig v. Hart, 58 N. Y. 525; McDonald v. Fithian, 1 Gilm. 26; Fairman v. Bavin, 29 Ill. 75; Hughes v. Washington, 72 Ill. 84.

To bind the principal he must be fairly and fully informed of the acts of his agent: Cadwell v. Meek, 17 Ill. 220; Farwell v. Meyer, 35 Ill. 40.

A principal is bound only by such acts as are within the scope of the agent's authority: Matthews v. Hamilton, 23 Ill. 470.

An agent of the buyer cannot set up that he was the undisclosed agent of the seller to justify a wrong done to the buyer: Cottom v. Holliday, 59 Ill. 176.

A sale made under such circumstances may be avoided by the purchaser: Ely v. Hanford, 65 Ill. 267.

Oldershaw v. Knoles.

As to what constitutes a custom: Franklin Ins. Co. v. Humphreys, 65 Ind. 556; Turner v. Dawson, 50 Ill. 85; Bissell v. Ryan, 23 Ill. 566; Wilson v. Bauman, 80 Ill. 493.

Bailey, P. J. We cannot refrain from expressing our surprise at the instruction given to the jury by the learned judge before whom this cause was tried. There is no view of the record we are able to take in which said instruction does not seem to be in clear and palpable conflict with the principles decided by this court on the former appeal.

On the former trial it was proved that, after the several purchases of lard by the plaintiffs for the defendant, and before the sale of the same by the plaintiffs on the market for want of margins, the plaintiffs, as to 750 tierces of said lard, settled said purchases with the members of the Board of Trade from whom the same were made, they in each case receiving a small profit by way of differences of price; and that after said sale they in like manner made a settlement of the contract for the remaining 250 tierces, thereby suffering a small loss. The plaintiffs thereupon offered to prove that, according to the uniform course of dealings on the Board of Trade, all purchases and sales made by commission merchants for their customers, were made in their own names, without disclosing who their customers were, so that such contracts constituted, apparently, transactions to which the commission merchants alone were parties; that said settlements were made in pursuance of a general custom and usage prevailing on the Board of Trade, by which, whenever it was ascertained that a commission merchant had made a contract of purchase, for future delivery, of a given quantity of a particular commodity, and had also made with the same or some other party a contract of sale of a like quantity of the same commodity for the same delivery, and (in case the two contracts were made with different parties) where it appeared that such parties had outstanding similar contracts with each other, either directly or through other dealers, so as to form a chain or ring of contracts for the purchase or sale of a given quantity of a particular commodity for the same delivery, a clearance or settlement was immediately effected

between all the parties, as between themselves, each paying or receiving the difference between the price fixed in his contract of purchase and that fixed by his contract of sale; that such clearance or settlement was made by mutual consent of the commission merchants concerned, and for their mutual convenience, and that its effect upon the rights of their customers for whom contracts of sale or purchase for future delivery had been made, was to merely substitute, in case of a purchasing customer, the contract of another customer for whom the merchant had already made a sale, in place of the contract of the third party from whom he had made the purchase in the first instance, and *vice versa.*

The evidence thus offered was excluded, on the ground that such usage and custom, if it existed, was against the policy of the law and void; and, as a consequence, that it could not be resorted to to change or modify the dealings of the parties, or to justify the substitution by the commission merchant for his customer, of one contract for another. The question of the validity and legality of such usage or custom was thus directly presented, and in holding that the court below erred in excluding the evidence offered, we necessarily decided that the usage or custom which such evidence tended to establish, was, if proved, valid and binding on the defendant.

On the last trial, the court below followed the decision of this court to the extent of allowing the evidence previously excluded to be introduced, but in his charge to the jury, the learned judge held, in effect, that the custom or usage which such evidence tended to establish was utterly void; and by directing the jury to find a verdict for the defendant, he entirely excluded said evidence from their consideration.

As our judicial system is organized, a decision of an appellate court must necessarily be binding upon and control the action of the court from which the appeal is taken, so far, at least, as concerns the particular case in which the decision is rendered. Such decision becomes the law of the case, and must control the parties through the whole subsequent progress of the litigation, at least until the facts appearing in the evidence are so far changed as to invoke the application of legal prin-

ciples which were inapplicable to the case at the time the decision was rendered.   This rule follows from the necessary subordination to the appellate court of the court from which the appeal is taken, and it may also be observed that the 17th section of the act establishing this court, by necessary implication, if not in express terms, makes the opinions of the court of binding authority in the causes in which they are given.

A decision of this court may be set aside here on re-hearing, where such re-hearing is applied for within the time and in the manner prescribed by our rules, or it may be reversed by the Supreme Court on appeal or writ of error, but until it is vacated in one of these modes, the legal principles thereby established are, as between the parties, *res adjudicata,* and are binding upon them, both in this court and in the court below. It certainly, then, is not within the province of the subordinate tribunal to overrule or disregard them.

But even if the validity of the custom or usage established by the evidence were an open question in this case, we are still of the opinion that it is valid.   We need not here repeat the line of argument in support of this view adopted in our former opinion.   We merely refer to it as still expressive of our views after having heard the entire question ably and elaborately re-argued.

It is urged, however, that even conceding the validity of a custom authorizing a commission merchant, on making clearances or settlements with other members of the Board of Trade, to substitute with his customer, in place of the contract cancelled by the settlement, another contract identical in terms, previously made by him for another customer, the contracts sought to be substituted in the present case were not identical in point of price with the contracts cancelled, and for that reason could not be so substituted.

It should be observed that according to the custom in question a commission merchant can be a party to such clearance or settlement only when he appears in one contract as a purchaser and in another as a vendor of the same amount of a particular commodity for the same delivery.   If he is dealing as a commission merchant solely, and not on his own account, as ap-

pears to have been the case with the plaintiffs, he must have made a contract of purchase for one customer, and a contract for the sale of the same amount, for the same or some other customer, both for the same delivery. The contracts must necessarily be identical in terms in all respects except as to price. But the evidence shows that by the process of settlement this difference, if any exists, is provided for and compensated. For example: if a dealer has made for A, one of his customers, a contract to sell 5,000 bushels of wheat at $1 per bushel, and for B, another customer, a contract to purchase the same amount at 95 cents per bushel, he collects on the settlement the difference between these two prices, and passes the same to the credit of A, thus reducing the amount. A will thereafter be entitled to receive for his grain ninety-five cents per bushel the precise amount B has contracted to pay. The process of settlement merely releases the dealer from his liability to other members of the board, and brings together two of his customers, a seller and a buyer, and makes them parties to one contract.

It may be proper for us to say in conclusion, that certain evidence was introduced at the trial on behalf of the defendant, which, if the jury had been permitted to pass upon it and had been satisfied of its truth, might have warranted them in finding the verdict which was found. The evidence we refer to tended to show that on the evening of the 20th day of February, 1877, the defendant had an interview with one of the plaintiffs in Chicago, at which the defendant was required to advance the additional sum of $2,000 as margins on the purchases the plaintiffs had made for him; and as the defendant did not have the money at hand, it was agreed that he should take the train that evening for Jacksonville, Ill., where he resided, and try to raise the money; that if he succeeded in raising it, he was to return to Chicago the next day, by a train which usually arrived at about four o'clock P. M., but that if he failed he was to telegraph, and that the plaintiffs would not sell out his lard until they heard from him; that the defendant accordingly returned to Jacksonville that night, and the next morning succeeded in raising the money, and returned with it to Chicago by the train agreed upon. It appears that a little before one o'clock P. M.

Oldershaw v. Knoles.

of the 21st, and several hours before the train on which the defendant was to return from Jacksonville could arrive, the plaintiffs, without hearing from the defendant, sold out his lard for want of sufficient margins.

The plaintiff with whom the defendant had said interview testifies, however, that the defendant agreed to telegraph from Jacksonville in the morning whether he succeeded in raising the money or not, and in this respect the evidence is conflicting. It appears that plaintiff sent him one or more dispatches, inquiring whether he had raised the money, and failing to get any response, sold out the lard.

Can it be doubted, that if the arrangement upon which the defendant went to Jacksonville is correctly stated in the defendants' testimony, the plaintiffs had no right to sell out the lard until sufficient time had elasped for the defendant to return with the money, or until the receipt of a telegram announcing his inability to raise it? Whatever may have been the plaintiffs' rights by virtue of the rules or usages of the Board of Trade in the absence of an express contract, such rules and usages cannot prevail as against such contract.

But whether the arrangement upon which the defendant went to Jacksonville is correctly stated in his testimony, or in that of the plaintiffs, was a question for the jury, and they should have been permitted to pass upon it. As the instruction of the court withdrew from their consideration this and all other controverted questions of fact, the testimony thus withdrawn cannot be resorted to in support of the verdict.

For the error in the instruction to the jury, the judgment will be reversed and the cause remanded for further proceedings, not inconsistent with this opinion.

Judgment reversed.