# THE INTERNATIONAL BANK

*v*.

## ERASTUS H. FERRIS.

118   465
35a  183
118   465
68a  577

*Filed at Ottawa November 13, 1886.*

1. BANKS AND BANKERS—*collections—application of proceeds—liability therefor*. If the holder of a draft instructs his banker to collect the money due on it, and hold the same until called for, and the bank, in violation of such instruction, pays the same to another by crediting it to the account of the latter, it will be liable to the person for whom it made the collection.

2. But where the collection is made for the owner under his direction, or under an instruction of a person accompanying him, given in his presence and hearing, to hold the money until one or the other of the two should give directions as to its disposition, and such other person afterward has the same paid to himself, or placed to his credit to make good his overdrawn account, the bank will not be liable to the owner for whom the collection was made.

3. EVIDENCE—*production of books of account under subpœna duces tecum*. Where a witness, in obedience to a subpœna *duces tecum*, to produce his books of account, showing a transaction between him and a party to the suit, produced his cash book, and stated, on examination, that his ledger was lost and he had been unable to find it, and he was examined as to the cash book, one item of which was given in evidence, and no objection was made that the witness had not produced all the books in his power, it was *held*, that an assignment of error that the court refused to enforce the subpœna was not well taken.

4. RATIFICATION—*with knowledge of the facts*. In order to bind a party as principal, by the ratification of an act of another, he must have been, at the time, fully informed of all the material facts.

5. INSTRUCTION—*not referring to all the elements in the case*. An instruction directing the attention of the jury to the principal question in the case will not be erroneous, even if there are some minor and subordinate questions not noticed therein, but to which attention has been called in other instructions.

WRIT OF ERROR to the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. ELLIOTT ANTHONY, Judge, presiding.

30—118 ILL.

Messrs. KRAUS, MAYER & BRACKETT, for the plaintiff in error:

The court should have enforced the production of the books by the witness. 2 Tidd's Pr. 805; 3 Chitty's Pr. 828, 829; 3 Greenleaf on Evidence, sec. 335; 1 Wharton on Evidence, sec. 377; 2 Wait's Pr. 726; *United States* v. *Babcock*, 3 Dill. 566; *Amey* v. *Long*, 7 East, 473; 2 Sweeney, (N. Y.) 194.

The question whether the books were necessary, or what they showed, was not for the witness to decide, but for the court to determine. *Amey* v. *Long*, 7 East, 473; *Chaplain* v. *Briscoe*, 5 S. & M. 198; *Bull* v. *Loveland*, 10 Pick. 9; *Doe* v. *Kelly*, 4 Dowl. 473.

The act of an agent may be presumed to have been ratified by his principal when the acts and conduct of the latter are inconsistent with any other supposition, as, when he receives and holds the fruits of the agent's acts. *Hall* v. *Harper*, 17 Ill. 82; *Madux* v. *Beran*, 29 Md. 485; *Woodbury* v. *Laund*, 5 Minn. 339.

A principal who is informed of an unauthorized act done by his agent, must give notice of his dissent within a reasonable time, or his assent and ratification will be presumed. *Williams* v. *Merritt*, 23 Ill. 623; *Cairnes* v. *Bleeker*, 12 Johns. 300; *Connett* v. *Chicago*, 114 Ill. 233; *Booth* v. *Wiley*, 102 id. 84; *Jervis* v. *Hoyt*, 2 Hun, 637; *Johnson* v. *Wingate*, 29 Me. 404; *Clay* v. *Spratt*, 7 Bush, 334; *Farwell* v. *Howard*, 26 Iowa, 381; *Law* v. *Cross*, 1 Black, (U. S.) 533; Story on Agency, sec. 255.

Ferris was bound by the act of Bruce, on the principle that "a party is bound by the acts of another done in pursuance of an apparent authority." *Noble* v. *Nugent*, 89 Ill. 524; *Anderson* v. *Armstead*, 69 id. 452; *McNeil* v. *National Bank*, 46 N. Y. 345; *Mixon* v. *Brown*, 57 N. H. 34; *Doubleday* v. *Cress*, 60 Barb. 181; *Bridenbacker* v. *Lowell*, 32 id. 9; *Debaum* v. *Atchison*, 14 Mo. 543.

What facts amount to a ratification is a question of law. *Swartwout* v. *Evans*, 37 Ill. 443; *Trustee* v. *McCormick*, 41 id.

323; *Marine Co.* v. *Carver*, 42 id. 66; *Paul* v. *Berry*, 78 id. 158; *Henderson* v. *Cummings*, 44 id. 325.

Messrs. FOWLER, REMY & GREGORY, for the defendant in error:

The court below made no ruling in respect to the production of the books.

The questions of fact are settled conclusively by the affirmance of the judgment by the Appellate Court.

The instructions are not obnoxious to the objections urged against them.

Mr. JUSTICE MAGRUDER delivered the opinion of the Court:

This was an action of assumpsit, brought by E. H. Ferris against the International Bank of Chicago, in the Superior Court of Cook county, to recover money had and received to and for the use of the plaintiff. The declaration contained only the common counts, and the damages were laid at $3000. The case was tried before a jury, who returned a verdict for $1060.40, and judgment was rendered upon the verdict. The Appellate Court has affirmed the judgment, and the case is brought before us by writ of error.

In November, 1882, Ferris, who was the captain of a schooner, running upon the lakes, lost his vessel and abandoned her to the insurance company. She was insured in the Marine Insurance Company of Buffalo, whose Chicago agent was E. K. Bruce. Ferris received of Bruce, in payment of the insurance money, to which he was entitled, two drafts, one for $511.33, and the other for $1980, both payable to the order of Ferris, both dated December 26, 1882, and both drawn by Bruce on Crosby & Dimick of Buffalo, the representatives of the insurance company in that city. Ferris, who had been a seafaring man for more than twenty-five years, was unacquainted with any of the banks in Chicago, and was ignorant

of their ways of doing business. He was desirous of having the drafts collected, and, for the purpose of effecting their collection, Bruce, who had been in the habit of doing business with the International Bank, took him there, and introduced him to Schweisthal, the cashier.

Ferris and Bruce went to the bank on December 26, 1882, and the former endorsed the drafts. It is admitted, that Ferris was then indebted to Bruce in a sum which was at least equal to the amount of the smaller draft. Accordingly, by his direction and with the consent and understanding of all parties, the draft for $511.33 was turned over to Bruce, and at once credited by the bank to Bruce's account. The bank agreed to collect the larger draft for $1980, and was to be paid $15 for doing so. The main dispute between the parties is in reference to the instructions, which were given to the bank, or its cashier, as to the disposition, that was to be made of the $1965, when collected. Defendant in error claims, that he told the cashier to hold the proceeds of the collection, until he, Ferris, called for them. Plaintiff in error claims, that it was instructed to hold the money, subject to the order of either Ferris or Bruce. It is undisputed, that the bank was to retain the funds, and not to deposit them to any one's credit, until it should receive further directions in the future from somebody.

Plaintiff in error collected the $1980, through its correspondent, the German Bank of Buffalo, about the 28th or 29th of December 1882, and received advices of the payment on December 30, 1882. After deducting the $15, it made out a certificate of deposit, dated January 2, 1883, for the balance, $1965, payable to the order of "M. Schweisthal, cashier," and signed "M. Schweisthal, cashier," and held the certificate, until January 20, 1883.

On January 20, 1883, the bank gave Bruce, who then had a deposit account with it, credit for the whole amount of the $1965. It is admitted, that, at the close of the 19th day of

January, 1883, Bruce's account with the bank was overdrawn to the amount of $1585.26. The debt, due to the bank on account of this overdraft, was discharged by the credit, so given on the 20th, and the balance of the $1965 was drawn out by Bruce afterwards. Schweisthal states, that Bruce came into the bank on the 20th, and directed the money to be placed to his own credit. Bruce denies, that he gave any such direction.

If Ferris, as is claimed by him, instructed the bank to collect the money, and hold it, until he should call for it, and the bank, in violation of such instruction, paid the money to Bruce, by crediting it to the latter's account, the bank was unquestionably liable to Ferris for the money. But if the bank, as it claims, received instructions from Ferris, or from Bruce in the presence and hearing of Ferris, to collect the money and hold it, until either Ferris or Bruce should give directions, as to its disposition, and, on January 20, Bruce did direct, that it should be placed to his own credit, then the bank was not liable to Ferris for the money. What the instructions were and what was done, in pursuance of them, are questions of fact. The judgment of the Appellate Court upon those questions of fact is final, and can not be reviewed by us. It only remains to consider, whether any error was committed by the trial court, in the admission or exclusion of evidence, or in the giving or refusing of instructions.

It is claimed by plaintiff in error, that the court below refused to enforce the *subpœna duces tecum*, which had been served on the witness, Bruce, and erred in doing so. The books, which the subpœna called for, were those, pertaining to the transactions between Bruce and Ferris. If it be conceded, that it was material to show the state of the accounts between Bruce and Ferris, the record does not sustain the charge, either that Bruce was not required to produce, or that he did not, as matter of fact, produce, all the books in his possession, bearing upon the subject of such accounts. It is

true, the trial judge made some remark about the subpœna being too general in its terms, but he afterwards directed Bruce to get all the books he could find in reference to the accounts in question, and to bring them into court at its next sitting. After the adjournment, in answer to further questions upon the subject, Bruce produced his cash book, and stated, that his ledger was lost, and he had been unable to find it. Thereupon, counsel for plaintiff in error interrogated him as to the cash book, offered one of its items in evidence, and did not make any objection, that the witness had not produced all the books in his power. He furnished a sworn account, with itemized details, showing, that, in addition to the advances, paid by the small draft for $511.33, he had advanced for Ferris the sum of $1013.20. Ferris stated upon the trial, in open court, that he was willing to give the bank credit for these advances, and that he only claimed the balance, after deducting them. It is evident, that the jury, acting upon this statement, deducted the $1013.20 from the $1965, and rendered their verdict for the balance, with interest. If defendant in error had recovered the whole of the $1965 and interest thereon in this action, he would still have been indebted to Bruce in the sum of $1013.20, and, as Bruce would have owed the bank the amount of the verdict, herein rendered, defendant in error would have been liable to garnishment by the bank for such amount. We, therefore, see no reason, why plaintiff in error should complain, because Ferris consented to give it credit, in the first place, for the amount of such advances.

The first instruction, given for plaintiff below, closed with the following sentence: "The question for you to try arises on the evidence as to what directions were given by plaintiff, or any one authorized to act for him in the matter, as to the disposition of the proceeds of this draft."

It is objected to this sentence, that it calls the attention of the jury to one question in the case, whereas there were other

questions. Whatever questions, other than that here indicated, were involved in the controversy, were merely subordinate, and the attention of the jury was sufficiently called to them by other instructions, that were given. It makes no difference what language the cashier may have inserted in the certificate of deposit, which was drawn up by him on January 2, 1883, in the absence of both Ferris and Bruce, and which was intended merely as a memorandum for his own use. The fact is not contradicted by any evidence in the case, that on December 26, 1882, the draft for $1980 belonged to Ferris, and, therefore, the bank could have no possible excuse for paying the proceeds of the draft to anybody but Ferris, unless his instructions authorized it to do so. What the instructions were, was, therefore, the question to be determined.

Whether or not Ferris ratified the act of the bank in paying the money to Bruce, after the payment was so made, is an inquiry, which can not properly arise in the case, as there is no evidence, tending to show any such ratification. At the plaintiff's request, however, the court did give two instructions upon this subject, and we do not think, that they were improperly modified, because the court inserted a clause to the effect, that, if there was any ratification by defendant in error, it would not be binding on him, unless, at the time of making it, he was fully informed of all the facts.

The following instruction, which was given, placed the matter before the jury, in a favorable light for the defendant below:

"On behalf of the defendant it is contended, that at the time this draft was left for collection, the agent of the bank was told, in the presence of Ferris, and without objection on his part, that the bank should hold the proceeds of this draft subject to the order of either Ferris or Bruce, and that subsequently it was carried to the credit of Bruce's account, by his direction. If you should find, from the evidence, that such are the facts, then the plaintiff could not recover."

We do not deem it necessary to enter into any further discussion of the instructions. Those, that were given, presented the case fairly, and there was no error in refusing those, not given.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*