## Charles W. Pardridge v. Alonzo J. Cutler.

1. CUSTOM AND USAGE—*Dealing With Reference to.*—A person who employs another to deal for him upon a board of trade must be held as knowing and intending that the business shall be conducted according to the usages and customs of such board, and this without reference to whether he in fact knows what the customs or rules of such board are.

2. GAMBLING—*Dealing in Grain.*—A sale of grain to be delivered in the future is valid. The statute only prohibits mere options to buy or sell, by which the parties are under no obligation to take or furnish the commodity at all, but may pay the difference in price and thus be discharged.

3. SAME—*" Ringing up " Transactions on a Board of Trade.*—The closing up of transactions on a board of trade for the purchase and sale of grain by setting off one trade against another—in the parlance of the Exchange, " ringing up "— does not make the transactions gambling contracts, and void under the statute.

4. SAME—*Dealing on a Board of Trade.*—If the understanding between persons dealing upon a board of trade is that nothing is to be received or delivered upon their trades, but that they are to be settled and disposed of by the mere payment of differences, then, under the statutes of this State, the transactions are gambling contracts, and are illegal and void, and can not form the basis for a recovery.

5. SAME—*Dealing on a Board of Trade—Secret Intention of One Party.*—Whatever may have been the secret intention and design of a party dealing with a broker on a board of trade, if the broker traded in such a manner that deliveries could have been compelled, and with the purpose and intent of making actual sales and purchases, and not mere hazards as to the rise and fall of the market, the dealings were not illegal, and a recovery may be had therefor.

6. SAME—*Burden of Proof.*—The burden of showing that a transaction is a gambling one is upon the party asserting it.

7. SAME—*A Question of Fact.*—Whether or not, in a given case, deals upon a board of trade are gambling transactions, is for the jury to decide in view of all the evidence, and, in the absence of error of law, their finding is conclusive.

8. SAME—*Evidence of.*—The fact that a person buying grain on a board of trade was not a dealer in grain; that he had no warehouse in which he could store it, mills in which it could be ground, or business in which it could be consumed; that he was a dry goods merchant, carrying on a business of which dealing in grain was no part, and that he had no idle money in his possession, may all be considered by a jury in determining whether the real purpose of the parties was to actually deal in grain, or merely to do that which the law pronounces gambling; but they are not conclusive.

Assumpsit, on the common counts. Appeal from the Circuit Court of Cook County; the Hon. ABNER SMITH, Judge, presiding. Heard in this court at the October term, 1896. Affirmed. Opinion filed February 1, 1897.

YOUNG, MAKEEL & BRADLEY, and SHOPE, MATHIS, BARRETT & ROGERS, attorneys for appellant.

A. B. JENKS, attorney for appellee.

MR. JUSTICE WATERMAN DELIVERED THE OPINION OF THE COURT.

This suit was an action of assumpsit brought by appellee, a broker doing a commission business on the Chicago Board of Trade, under the name of A. J. Cutler & Co., against appellant, for many years a dry goods merchant in, and resident of, the city of Chicago.

Appellant, in the year 1891, began to deal upon the board of trade, exclusively through the agency of appellee. Such exclusive dealing seems to have been brought about through the agency of one Nims, who was to receive one-half of the commissions earned by appellee in this business.

There is not entire agreement as to what the original arrangement between appellant and appellee was. There was testimony that appellee agreed to extend to appellant, in regard to such dealings, a large credit.

The fact is that appellee did give appellant credit to a large amount, and that in the course of the years during which the transactions out of which this suit has grown occurred, appellant, through the agency of appellee, made very many and large transactions for the purchase and sale of grain upon the Chicago Board of Trade; so that from December 1, 1891, to April 3, 1893, appellee purchased for appellant, for future delivery, 4,845,000 bushels of grain, and sold the same out before the time of delivery arrived; 220 of these transactions were purchases, and 229 were sales. Upon them all, the only grain actually delivered or tendered for delivery, was 10,000 bushels of corn, bought December 1, 1891.

The trading of appellant upon the Chicago Board of Trade through the agency of appellee, continued until about April 1, 1893, when appellant had on hand, made through the agency of appellee, contracts for grain amounting to 770,000 bushels, at which time appellee called upon appellant to put up margins upon such trades. Appellant refused to deposit the margins so called for, on the ground that appellee had agreed to carry the trades without margins. Thereupon appellee, on April 3, 1893, against the protest of appellant, closed out all of his contracts then outstanding, at a loss of $45,287.50.

Some time between September 6, 1892, and February 21, 1893, upon the request of appellee, appellant let him have various sums of money, amounting, all together, to $23,000. This money, it is insisted, and was testified to by appellant and one Nims, was given to appellee as a loan to him, which loan appellant in this suit sought to set off and recover from appellee. Appellee insisted and testified that this $23,000 was paid by appellant on account of what he was then owing.

Eminent counsel were employed in the case, and the trial was a long one, lasting some twelve days. The typewritten report of the testimony, there produced, fills over 1,200 pages. The jury found for the plaintiff, assessing his damages at the sum of $54,062, upon which there was judgment.

Appellant insists that the arrangement between him and appellee was that there was to be extended to him, appellant, a credit of $100,000, and that the closing out of the transactions when, according to appellee's own showing, such credit had not been exhausted and margins to such an extent were not required, was in violation of the arrangement between the parties, and that consequently appellee is not entitled to recover anything.

While we think it clear that there was an arrangement for an extension of a credit of $5,000, we do not find in the evidence anything warranting us in overturning the verdict of the jury to the effect that there was no agreement for an extension of credit beyond the sum last named.

The suit in question was commenced June 17, 1893. On August 18, 1893, appellant signed the following note :

" $62,000.            CHICAGO, ILLINOIS, August 18, 1893.

Five years after date, I promise to pay to the order of Edwin Pardridge, sixty-two thousand and no 1-100 dollars, payable at Chicago, Illinois, with interest at six per cent per annum, payable at the maturity of this note. Value received.

Providing, however, that the said Edwin Pardridge does not use intoxicating liquor in any form during the life of this note. Should he do so this note is null and void.

                            C. W. PARDRIDGE."

This note being at the trial produced by appellee, into whose hands it had come, it was insisted by appellant that it was in full satisfaction of the claim of appellee. It does not appear that the note is of any value, or that anything could be recovered by appellee thereon. The note is conditional, is not payable to appellee or his order, and has never been indorsed by Edwin Pardridge, to whom it is payable. The circumstances under which appellee received this note were given in evidence, and do not, in our judgment, amount to a taking of it by him in settlement or satisfaction of the claim for which this suit is brought.

As to whether the $23,000 had by appellee from appellant was a loan or a payment upon account is immaterial, if the finding of the jury as to the nature of the transactions under consideration is to be sustained, as appellee has had credit for such $23,000 upon the account presented by appellee. When this $23,000 was given to appellee, appellant was continuing to deal on the board of trade through appellee, and apparently recognizing such transactions as legitimate ones for payments upon and commissions earned, under which he would be bound to appellee, and appellant was then apparently, on account of such dealings, largely indebted to appellee.

It seems most probable that such money was intended to be a payment upon account.

We think testimony as to the rules, regulations and usage

of the board of trade was properly admitted. Appellant having undertaken to deal upon the board of trade, knew that his transactions must there be conducted according to the rules, custom and usage of that place, and employing, as he did, appellee to act for him, he must be held as knowing and intending that the business would be conducted according to the usage and custom of that market, and this without reference to whether he in fact knew what the custom or rule of such place was. Curtis v. Wright, 40 Ill. App. 491; Lonergan v. Stewart, 55 Ill. 44, at 51; Bailey v. Bensley, 87 Ill. 556, at 559; Perin v. Parker, 126 Ill. 201, at 207; Samuels v. Oliver, 130 Ill. 73, at 79; Bibb v. Allen, 149 U. S. 481, at 489.

It was shown that all through these dealings, appellant's transactions were closed out by what is known as "ringing up," and this, it is said, was improper. "Ringing up," it appears, is nothing more or less than the setting off of one trade against another—a thing which occurs in great cities in mercantile transactions as to ninety-five per cent of the entire volume of business; that is to say, in great cities on purchases and sales of merchandise to the extent of $100,000, in the settlement of the same, upon the average less than $10,000 in money is actually paid, payments being made through checks upon bank, credit balances being set off against each other. The closing up of transactions on the board of trade for the purchase and sale of grain, by setting off one trade against another—in the parlance of the Exchange, "ringing up"—is necessarily no more illegal or improper than is the setting off of credit balances by merchants through checks on banks. True it is, as is urged by appellant, that thereby the indentity of the transaction by him had upon the board was lost; that is to say, having purchased a thousand bushels of corn from A, and sold a thousand bushels of corn to B, if each transaction was closed out by a setting off of one against the other, he then had a contract for the delivery of grain with neither. Such result was for his convenience, and entailed upon him no loss, and such method of closing up transactions was a thing of which

he was, during all these years, well aware, without making complaint thereof. Oldenhaw v. Knoles, 4 Ill. App. 63; Oldenhaw v. Knoles, 6 Ill. App. 325.

Appellant insists that a large portion of the transactions had by him was mere "puts" and "calls." As to this, the evidence is contradictory, and such that we do not feel warranted in reversing the verdict of the jury upon it.

The complaint is made that the court in the presence and hearing of the jury made remarks prejudicial to appellant.

One of the unfortunate results of the statute of this State doing away with the common law method of instructing juries and imposing an artificial, illogical and unscientific method, is that the trial judge can hardly open his mouth in the presence of the jury without giving the defeated party an opportunity to urge that thereby the jury was in some way improperly influenced.

The remarks of the court complained of were made in the course of discussions which took place relative to the admissibility of evidence; they were not addressed to the jury; were only such as was natural and proper to an understanding of what the view of the court was, and we do not think the jury was influenced thereby.

If the understanding between appellant and appellee was that no grain was to be received or delivered upon these trades, but that they were to be settled and disposed of by the mere payment of differences, then, under the statute of this State, the transactions were gambling, illegal and void, on account of which no recovery can be had by appellee. If, on the other hand, whatever may have been the secret design and purpose of appellant, appellee, as a broker, purchased and sold this grain in such a manner that deliveries could have been compelled, and with the purpose and intent of making real, not fictitious, transactions, actual sales and purchases, and not mere hazards as to rise and fall, the buying and selling being neither of "puts" or "calls" or "options," but of an actual existing commodity, the dealings were not illegal, and recovery may be had therefor.

The burden of proof to show that the dealings were

Pardridge v. Cutler.

gambling, was upon appellant; he it is who insists that during these years in all these dealings, involving so large a sum of money, he was engaged in what the law pronounces illegal, and upon which no recovery can be had; manifestly, it is for him to adduce evidence sustaining such contention. Barnett v. Baxter, 64 Ill. App. 544.

It was the duty of the jury to take into consideraton not merely the transactions themselves and what was said by the respective parties, their agents and servants, in arranging for them, but also the circumstances and surroundings under which this trading began and was carried on, for, as the jury was properly instructed, the question is not merely what was said by appellant and appellee in regard to this matter, by which appellee might have known and understood that appellant intended to gamble, but it was the duty of the jury to inquire what there was of which appellee was bound to take notice concerning the intention and purpose of appellant, which he, appellee, was assisting in carrying out. Thus, the fact that the appellant was not a dealer in grain, that he had no warehouse in which he could store it, or ships or cars with which he could carry it to another market, mills in which it could be ground, or business in which it could be consumed; that he was a dry goods merchant, carrying on a business of which dealing in grain was no part; that at the outset he obtained a credit of a large sum, thus indicating, at least, that he had not in his possession idle money which he desired to invest in the purchase of grain, that he might reap a profit by a rise in the value thereof; and that if it were the case, nothing was made to appear to appellee by which he understood that appellant was already under obligations to deliver large quantities of grain to other parties, and for the purpose of fulfilling such contracts desired that purchases should be made upon the board of trade; from all these things appellee might have thought that appellant had no purpose to engage in legitimate dealing upon the board of trade, to speculate as one properly there may, buying grain and holding it for an advance, but that his real purpose and intention was merely

to do that which the law pronounces gambling. It is apparent that while any man may legitimately purchase grain upon the board of trade, and any broker may properly act as his agent, the thought of the broker as to what the actual intention of a party coming to him for assistance in so dealing is, may vary with reference to the parties who so approach him. The country dealer, purchasing grain from farmers who bring it to his warehouse, can hardly do so with safety unless contemporaneously therewith he sells upon the board of trade an equal amount, although at the time of such sale the grain is not there for delivery in accordance with the regulations of the mart.

And, with reference to orders from such dealer to sell, a broker may have no suspicion that anything other than a perfectly legitimate transation is contemplated; but when a lawyer, a doctor, a minister of the gospel, a teacher or a dry goods merchant comes to a Chicago broker, ordering transactions for the purchase and sale upon the board of trade of grain for which he has no apparent use, the thought might cross the mind of the most unsuspicious of men that there was an intention not to actually buy and receive or sell and deliver, but to speculate in what is known as "differences," to do that which the statute of this State calls gambling, and if such transaction ordered by one of the class last mentioned, continuing through a series of years and running into millions of bushels, without in the sum of the dealings there having been in but one instance an actual transfer of grain, that for 10,000 bushels, the broker might conclude, and that long before the dealings had continued for such time or reached such magnitude, that his principal's real purpose was to speculate and deal in options, and not to do such trading as is legitimate and proper.

All this is, however, it is insisted, a question of fact for the determination of the jury, and with reference to this it must be borne in mind that it is not what appellant intended, but what he and appellee designed; that is to say, what appellant intended and what appellee knew, or had notice, was designed, and what he, appellee, with such notice or knowledge, willingly engaged in.

Pardridge v. Cutler.

Under the previous decisions of this and the Supreme Court, we do not feel at liberty to say that the transactions presented to us by the record of this case are such that the law pronounces them gambling, and that, as a matter of law, the jury should have been instructed to find for the defendant. We do not think that the Supreme Court of this State has gone to that extent in any case. If, therefore, the jury was properly instructed, its verdict upon this question is final. Curtis v. Wright, 40 Ill. App. 491; Graham v. Sadlier, 60 Ill. App. 522; Davidson v. Colburn, 54 Ill. App. 636.

We do not approve of the phraseology of all of the instructions; they are, however, to be considered, not singly, but as a whole; viewed in which way, we do not think that there was in respect to them anything of which appellant can properly complain. Village of Sheridan v. Hibbard, 119 Ill. 307; Underwood v. Wolf, 131 Ill. 425; International Bank v. Ferris, 118 Ill. 465.

Among other instructions given at the instance of the defendant was the following:

" If you believe from the evidence that the defendant, at the time the orders were given to the plaintiff for purchases and sales to be executed upon the Board of Trade of the city of Chicago, did not have the articles purported to be sold by him, nor have any use in his business for the articles purported to be purchased, and that he did not expect or intend to deliver the articles purported to be sold, or to receive and pay for the articles purported to be purchased, but simply intended to speculate upon the future market prices of the articles purported to be bought or sold, and to settle such purported purchases and sales by purported counter sales and purchases, and by the payment of differences in prices, then you are instructed that such an intention upon the part of the defendant would render such actions, as to him, gambling transactions and unlawful under the statute; and if you further believe from the evidence, that at the time the plaintiff undertook the performance of the defendant's orders, the plaintiff knew, or by the exer-

cise of ordinary prudence and care ought to have known, or had notice, actual or constructive, that the defendant did not have or expect to have the commodities purported by him to be sold, and did not expect to receive or pay for the commodities purported to be bought, but intended simply to speculate or wager upon the future prices of such commodities, and to settle all such contracts by the adjustment of differences in market prices, then such transactions, as between the plaintiff and defendant, were gambling transactions, and the plaintiff can not recover for moneys paid out on those transactions or for commissions on the same, but the defendant is entitled to recover back any money shown by the evidence to have been paid by him in the matter of such transactions."

This, together with the statement in other instructions, that the plaintiff was chargeable with such notice regarding defendant's intentions as would have been deduced from the defendant's actions by an ordinary man—that the form of the contract between appellant and appellee is not conclusive as to the true nature of the transactions; that that is to be determined by the real intention of the parties, and that if it was their intention, or that of the plaintiff, known to the defendant, that no grain or other commodity should be delivered or received by the defendant, but that the said transactions, as between the plaintiff and defendant, were to be, and in fact were, settled upon the differences alone in the market between the prices at which the grain was bought and sold, then such transactions were gambling transactions and void—together with what else is contained in the other eleven instructions given at the instance of the defendant, fairly presented the law of the case to the jury.

We do not mean to be understood as saying that this record is free from error; it would be strange, indeed, if it were; but we do think that question of fact involved in the case was fairly presented to the jury, and that no improper thing occurred during the trial by which it can be said appellant was prejudiced to that degree that the judgment of the court below should be reversed. We regard the case,

as we have before said, as presenting clearly the question whether the circumstances of and surrounding this transaction are such that the law puts upon it the stamp of invalidity, and that therefore the jury should have been instructed to find for the defendant. Not feeling warranted in so holding, the judgment of the Circuit Court is affirmed.