Pardridge v. Cutler.

---

## Charles W. Pardridge v. Alonzo J. Cutler.

1.  WITNESS—*Knowledge of Witness Is a Question for the Jury.*—A ruling of the court which tells the jury, in effect, that the witness knows about the matter as to which he is asked to testify, is erroneous. Whether the witness so knows is a question for the jury after hearing his evidence.

2.  SAME—*Examination the Function of Counsel.*—The examination of witnesses is the more appropriate function of counsel, and the instances are rare and the conditions exceptional in a high degree, which will justify the presiding judge in entering upon and conducting an extended examination of a witness.

3.  EVIDENCE—*Of Intention. When a Matter Material to the Issue.*— When the intention of a party is a matter material to the issue, he has a right to testify as to what it was.

4.  SAME—*Account Containing Illegal Items.*—If illegal transactions enter into and constitute a part of an account, they vitiate the whole account and there can be no recovery unless the illegal part can be separated from the other items of the account.

Assumpsit, for commissions earned, etc. Appeal from the Circuit Court of Cook County; the Hon. FRANK BAKER, Judge presiding. Heard in this court at the October term, 1901. Reversed and remanded. Opinion filed November 13, 1902.

YOUNG, MAKEEL, BRADLEY & FRANK, and SHOPE, MATHIS, ZANE & WEBER, attorneys for appellant.

A. B. JENKS and WILLIAM A. FOSTER, attorneys for appellee.

MR. JUSTICE WINDES delivered the opinion of the court.

This suit was assumpsit by appellee, a broker doing a commission business on the Chicago Board of Trade under the name of Cutler & Co., against appellant, to recover for certain moneys alleged to have been lost, and commissions earned, in certain transactions in the purchase and sale of grain by appellee for appellant on said board in the years 1892 and 1893. The declaration was the common counts and the pleas general issue and six special pleas, setting up in different form and in substance that the transactions in question were gambling transactions under the statute, and illegal. Issues were made and a trial had in July, 1896, resulting in a verdict and judgment in favor of appellee for $54,062, which was affirmed by this court, but reversed by the Supreme Court for errors in procedure. A second trial in April, 1901, resulted in a verdict of $54,062.50 and judgment thereon, from which this appeal is taken.

The leading facts in the case appear in the opinions of this and the Supreme Court, reported in 68 Ill. App. 569, and 168 Ill. 504, except that certain rules of the board offered on the first trial, and evidence relating to a note of appellant of $62,000 are not in this record.

In view of the conclusions reached, after the most careful consideration of the whole record and arguments of counsel, which are very voluminous, we deem it unnecessary to refer further to the evidence in this connection than to say that, upon the main issues of the trial, viz., as to whether the transactions in question were or not gambling transactions under the statute, and therefore illegal, and whether

there was an agreement between appellant and appellee after March, 1892, that the former was to have a credit of $100,000 with reference to the transactions in question, under which appellee was to carry the transactions, the record presents a conflict in the evidence; that upon the whole evidence, in view of this conflict, there was, as we think, no error in refusing to take the case from the jury (168 Ill. 504, *supra*), and that had the verdict been in appellant's favor the evidence is, in our opinion, sufficient to sustain it.

Complaint is made of numerous rulings of the court upon the admission and exclusion of evidence and as to remarks by the trial judge during the progress of the trial, which, it is claimed, were calculated to create a prejudice in the minds of the jurors against appellant and the defense to the suit interposed by him. To discuss all these rulings and the remarks of the court so that their bearing upon the issues and the probable effect upon the minds of the jury could be made to appear with clearness, would unduly extend this opinion and serve no useful purpose. We will only refer to a few, which will, in our opinion, show that the attitude of the court toward the defense was calculated to and probably did create prejudice with the jury against appellant and his defense, that improper evidence was admitted and proper evidence excluded from the consideration of the jury.

During the examination of the plaintiff, with regard to a certain transaction which he says that he had for Mr. Pardridge upon the board, as to whether it was a sale or a purchase, the following occurred:

Counsel for plaintiff : "That isn't correct at all. The commodity is mentioned under the head of purchase. It is plain as the nose on the judge's face."

The Court : "What does he say this is ?"

Counsel for defendant : "He says it is a sale."

The Court : "Gentlemen, it seems to me—many years ago when I was a young man, I had a good deal of experience in this business. Mr. Cutler, there is such a thing as a report of a purchase; that is one thing you know, isn't it?"

The Witness : "Yes, sir."

The Court: "And a report of a sale. There is such a thing known to you in the trade and in your course of business; isn't that true?" A. "Yes, sir."

The Court: "Very well. Then when a transaction is closed down—when I used to speculate, I speculated in whisky. Now, I bought 100 barrels of whisky, for example, and my broker reported to me that he bought it; it was all done by telegraph. Now, he reported, bought on an order 100 barrels of whisky, for example, so much, and on another day there would come a report of a sale, if I ordered him to sell, that he sold 100 barrels of whisky; then would come an account of purchase and sale, the purchase and sale which would show the purchase. Either it may have been made a month before, and the sale, and the charges, if there ever were—in those days you may be sorry you were not on earth, when it was 2½ per cent every sixty days."

This language of the learned trial judge, to which appellant's counsel preserved an exception, we think was, in view of the defense made, that all the transactions under investigation were in violation of the statutes, calculated to impress the jury unfavorably, to say the least, toward the defense. Especially is this true as to that part in which the judge says he had had a "good deal of experience in this business," and that he had "speculated in whisky." True, the court did not say that the business in which he had had experience was illegal, and that his speculations were in violation of the statute, but the language is such that the jury might have drawn the inference that the court's experience was in an unlawful business. Appellant's counsel claimed that the very transaction being investigated was an unlawful one, and the court clearly referred to that transaction when he spoke of having "experience in this business."

Again, during the examination of the same witness, he produced a copy of a notice which he claimed to have sent to Mr. Pardridge, which was objected to by appellant's counsel for the reason the copy was illegible. Appellant's counsel had been notified to produce the original of the notice, but had failed to do so. Why, the abstract does not show. To the objection of counsel the court said:

" Perhaps if the original was produced here, it might be more legible, but I don't think it quite lies in the mouth of attorneys, when it is not produced, to say that a copy is not entirely legible."

In the subsequent examination of the witness it appears that the copy referred to was not distinct enough for the witness to read it. We think the remarks of the court were not justified and should not have been made. If counsel had the possession of the original and refused to produce it, the criticism of counsel by the court would have had some basis.

The same witness, upon being examined as to a trading card made by one Bangs, relating to an alleged transaction between the parties, was asked by plaintiff's counsel what his recollection was as to the transaction. After having looked at the card, the witness proceeded to answer, when appellant's counsel objected, to which the court said : " I think he knows about it. He may state." To this ruling an exception was preserved. We think the ruling was clearly error. It told the jury, in effect, that the witness knew about the matter as to which he was asked to testify. Whether the witness so knew was a question for the jury after hearing his evidence, and the court should not have given an opinion as to the witness' knowledge. Marzen v. People, 173 Ill. 43–58; Ill. C. R. R. Co. v. Souders, 178 Ill. 585–93.

It is said by appellee's counsel that an instruction given by the court of its own motion, to the effect that the jury " must not understand any remark made by the court during the trial as an instruction by the court upon any question of fact," and that all questions of fact were for the jury, and were to be determined from the evidence alone, counteracts any remarks of the court. This court affirmed the Souders case, *supra,* (79 Ill. App. 42–8), and attempted to excuse improper remarks of the trial court, because of like instructions, but the case was reversed because of the trial court's remarks. The Supreme Court, among other things, said :

" It is error for the court to make any remark indicating

his opinion upon any fact necessary to be proved.  *  *  *
Every one knows the importance juries ordinarily attach
to the remarks and opinions of the court."         ι

On the direct examination of the appellant he was being
examined with reference to the transactions in question,
and had testified about a conversation with Mr. Cutler, and
was asked the following question, to which an objection
was interposed by plaintiff, to wit:

Q. "After you had this conversation with Mr. Cutler,
your third conversation, about March 1, 1892, did you ever
communicate to him anything more regarding your inten-
tion ? "

Also the following question, to which an objection was
made, to wit:

Q. " Well, did you ever have any further conversation
with him about the matter of delivering grain after this
third conversation about the 1st of March, 1892 ? "

The objections were sustained and exceptions preserved.
It is apparent from the record that counsel for appellant
was endeavoring to establish by the evidence sought to be
elicited by answers to these questions, the nature of the
transactions in question and the intention of the parties
engaging therein, as bearing upon the question being
tried, viz., whether the transactions were gambling or other-
wise.   We think there was error in sustaining the objec-
tions, and it is cause for reversal.

The court also, in the same connection, refused to per-
mit appellant to answer what his intention was at the
time of the several transactions, with reference to receiv-
ing the grain bought and delivering the grain sold; also as
to the settlement of the various trades made.   This, we
think, was a material matter on the issue being tried, was
competent, and its exclusion was error.   Miner v. Phillips,
42 Ill. 131; Wohlford v. People, 148 Ill. 296; Delano v.
Goodwin, 48 N. H. 203.

Counsel for appellee say the intention of appellant in
these respects was immaterial because not communicated
to appellee.   The witness had previously testified to a con-
versation had with appellee, which indicates quite clearly,

as we think, what appellant's intention in all these deals was, viz., to violate the statute; but that there should be no question about it, he should have been allowed to state what in fact he intended in that regard.

The witness Schroeder, who was Mr. Cutler's bookkeeper, was called, and proved the latter's books of account, which were admitted in evidence; among others, the ledger, which showed a balance against Mr. Pardridge of $61,865.05. Mr. Cutler only claimed on the trial $54,062.50, and testified, in effect, that he did not claim the full amount of the balance because the difference between his claim and what the ledger showed was made up by certain trading which Mr. Cutler did for appellant's boy, and interest. Schroeder testified that he made the entries in the books which went to make up the balance of Mr. Pardridge's account, but on cross-examination the court refused to allow the witness to testify as to many of the items that went to make up this balance, and what some of the different items were for, and refused to permit the witness to testify as to what different cash items in the account going to make up the balance were for, apparently upon the theory that the evidence was immaterial, because counsel for plaintiff stated they were not sued for.

We think that all of these rulings were erroneous, since the evidence, if permitted, would have shown if the claim of appellant's counsel was correct, that many of the items inquired about were for what is known as "puts and calls." The rulings were especially erroneous, as we believe, in so far as they relate to "puts and calls, since other evidence in the record tends to show that many of the transactions on account of which Mr. Cutler claimed to recover, were of that nature, and it was essential, such transactions being clearly within the prohibition of the statute, that they be separated and eliminated from the balance claimed by him before there could be any recovery. If illegal transactions entered into and constituted a part of the balance so claimed they would vitiate the whole account, and there could be no recovery unless the illegal part was separated from the

other items of the account.   Pickering v. Cease, 79 Ill. 328;
Lyon v. Culbertson, 83 Ill. 33; Wheeler v. McDermid, 36
Ill. App. 189.

The same witness having testified that he had knowledge
with regard to a certain transaction on account of which
the plaintiff claimed to recover, was asked, in effect, if he
knew from a conversation with Mr. Cutler why a certain
entry was made upon the books, that is, "changed over,"
to use the language of the witness, to which he answered,
"Yes, certainly."   An objection was made by plaintiff's
counsel, when the court, among other things, said it was not
for him (the witness) "to speculate as to what moved some
one else to do a certain thing."   This we think was error,
since the witness was asked to state the knowledge which
he had acquired from Mr. Cutler.   The witness was later
allowed to state his knowledge in this respect, but that did
not obviate, as we think, the prejudicial effect of the court's
remark above quoted.   The court also, on two other occa-
sions during the cross-examination of the same witness,
made use of language which in effect characterizes the tes-
timony of this witness as being "surmise."   From an exam-
ination of the record, we do not think the court's remarks
in this respect were justified by any evidence of the witness.
Even if justified by the evidence, the court should have
refrained from stating his opinion before the jury.

While appellant's counsel was cross-examining the same
witness with reference to the manner in which the books
were kept, apparently in a respectful manner, the follow-
ing occurred, to-wit:

"Counsel for defendant:   Q.   You know there are
transactions had upon privileges in this account;   I mean
in this customers' ledger that you have read from.   A.
Yes, sir.

The Court:   Point one out to me.   Take the customers'
ledger and point one out to me and give the details of the
transaction.

Counsel for defendant:   We object to the question and
except.

The Witness:   The put and call cards—

The Court:   I don't care about the put and call card;

point one out to me in the ledger.    A.    I can't do it, but I know they are in there, on the customers' ledger.

The Court :    Point one out to me, and give me the details of it, and what it is.    Just take and point it out to me.    If you know they are in the ledger, just point it out to me.

A.    I have a good memory, but I can't remember a certain transaction for eight or ten years.

(Exception by defendant to the remarks and questions of the court.)"

We think the action and language of the court was calculated to embarrass, if not to intimidate the witness. The jury also might well have inferred from the court's questions that he thought the witness was testifying falsely, or, at least, was disposed to answer favorably to the appellant.    We think the court's questions, repeated as they were, error.

In Dunn v. People, 172 Ill. 595, the court, in considering somewhat similar action by the trial judge, made use of the following language :

" Though at times the court may, by an opportune and carefully considered question, elucidate a point, aid an embarrassed witness or facilitate the progress of a trial, without in any degree influencing the jury or arousing distrust in the minds of the parties or their attorneys, yet the examination of witnesses is the more appropriate function of counsel, and it is believed the instances are rare and the conditions exceptional in a high degree, which will justify the presiding judge in entering upon and conducting an extended examination of a witness, and that the exercise of a sound discretion will seldom deem such action necessary or advisable."

The evidence tends strongly to show that one Nims, who was called for the defendant, acted as agent of Mr. Cutler with regard to his transactions with Mr. Pardridge. Appellant's counsel sought to prove conversations between Nims and Pardridge about making payments called for by Nims when Nims was sent by Cutler to Pardridge to get money on account of their dealings, Nims being authorized, as he says, by Cutler, to say to Mr. Pardridge that when the market got eased up he would send back the money for

which he, Cutler, had sent him.   Objection was made and the court sustained the objection.   The court also refused to allow Mr. Pardridge to testify to these same conversations.   The evidence sought to be elicited had a material bearing upon the claim of Pardridge, which was a leading part of the defense sought to be made, viz., that he had a contract with Cutler by which the latter was to " carry him for $100,000; " that is, that Cutler should credit Pardridge until, in his dealings, losses, if they occurred, should reach that amount.

We think the rulings in this regard were erroneous and very prejudicial to appellant.

In the examination of the witness Nims, he was asked by appellant's counsel if he had anything to do with regard to any " put or call " trading between Messrs. Cutler and Pardridge, to which he answered yes.   He was then asked what, if anything, he had to do with reference to those trades, to which an objection was made, and the court ruled that if he had any conversation with Mr. Cutler on the subject, it was competent, and limited his answer in that way.   This, we think, was error, as it is apparent, we think, from the witness' testimony, that he was familiar with these transactions, was acting for Mr. Cutler, and knew of their nature.

To the numerous other rulings of the court upon the evidence and the court's remarks during the trial, of which complaint is made, we have made no reference, for the reason that upon another trial they may be avoided, and we think the ones referred to specifically constitute such error as entitles the appellant to another trial.

Complaint is made of the refusal of certain instructions by the court, but after careful examination of each of them we find no reversible error in the court's rulings thereon.

The judgment is reversed and the cause remanded.